IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

YUPEI (CLAIRE) WANG                                                        PLAINTIFF

v.                                    CIVIL NO. 10-5046

WAL-MART STORES, INC.                                                  DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Yupei (Claire) Wang filed this *pro se* action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") and the American's with Disabilities Act (hereinafter "ADA") against Defendant in the United States District Court for the Southern District of New York (Case # 10-1266) on February 17, 2010. (Doc. 4). By Order dated February 17, 2010, the District Court for the Southern District of New York ordered the case be transferred to the United States District Court for the Western District of Arkansas. Plaintiff's Complaint was filed *in forma pauperis* (IFP). On April 19, 2010, Defendant filed a Motion to Dismiss pursuant to FED.R.CIV.PROC. 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 11). This Motion was referred to the undersigned for disposition or recommendation on April 22, 2010. (Doc. 13). As Plaintiff was proceeding *pro se*, the Court entered an Order advising Plaintiff she had until May 7, 2010, to file her Response. (Doc. 14). Plaintiff filed a timely Response (Doc. 15), and Defendant filed a Reply thereto. (Doc. 17). After being granted leave to do so (Docs. 18, 19), Plaintiff filed a Response to Defendant's Reply on May 24, 2010. (Doc. 20). The Court thereafter directed Plaintiff to file a Response more thoroughly addressing the

issues raised in her May 24, 2010 Response. (Doc. 21). Plaintiff filed such a Response (Doc. 22), and Defendant then filed a Reply thereto. (Doc. 23). The matter is now ripe for consideration.

**I.    Background:**

Plaintiff states in her Complaint that she was an employee at the Shanghai office of Wal-Mart GPS, also known as WMGS (Shanghai) Co., Ltd. (hereinafter "WMGS (Shanghai)"), located at 3P10 Shanghaimart, 2299 Yan'An West Rd., Shanghai 200336.[1] A copy of Plaintiff's employment contract with WMGS (Shanghai) was attached to Plaintiff's Complaint as Exhibit 3. The contract states:

> This Employment Contract ("Contract") is made by and between WMGS (Shanghai) Co, Ltd., a foreign-investment enterprise established under the laws of the People's Republic of China ("Employer"); and Ms. Claire Wang ID Card No./Passport No. 130281317 ("Employee"), in accordance with the Labor Law of the *People's Republic of China*, the *Labor Contract Regulations for Shanghai Municipality* and other relevant laws and regulations in the People's Republic of China ("PRC") and on the basis of free will, equality and consensus through consultations.

(Doc. 7, Exhibit 3). Plaintiff alleges her employment with WMGS (Shanghai) began on January 19, 2006, when she signed her Employment Contract. (Doc. 7, Exhibit 3). At that time, Plaintiff states she was also given a Wal-Mart Global Procurement Handbook pursuant to Article 10.3 of her Employment Contract. (Doc. 7, Exhibits 3 & 4). Plaintiff completed her three month probation period evaluation on April 18, 2006, thus becoming formally employed by WMGS (Shanghai). (Doc. 7, Exhibit 5).

---

[1] Throughout Plaintiff's Complaint and exhibits, Plaintiff refers to Defendant Wal-Mart Stores, Inc. as her employer. Defendant contends Plaintiff was employed by WMGS (Shanghai), a foreign investment enterprise established under the laws of the People's Republic of China, and not by Defendant.

Plaintiff states that on or around June of 2006, she was notified by her immediate supervisor, Doris Tsao, of a reconfiguration of product lines responsibility and team member rotation. Pursuant to this notification, Plaintiff held a meeting with Doris Tsao wherein Plaintiff questioned the logic of the reconfiguration. Plaintiff also arranged a meeting with John Huang, "GM, Hardline & Sam's," to discuss the reconfiguration and rotation decisions. On July 10, 2006, Plaintiff received a "Coaching for Success" letter from Doris Tsao. (Doc. 7, Exhibit 6). On or around October of 2006, Plaintiff met with Doris Tsao to discuss the negative health effects being experienced by Plaintiff due to prolonged extended work hours. Plaintiff states that after being given an ultimatum by senior management, she took medical leave for testing in November of 2006, and returned to work on February 26, 2007. On March 6, 2007, Plaintiff was notified of the intent to terminate her employment due to Plaintiff's current health condition. (Doc. 7, Exhibit 10). On March 14, 2007, Plaintiff states her contract was terminated. (Doc. 7, Exhibit 11).

Plaintiff contends her termination was based on a perceived, but inaccurate, medical disability which was used as a platform to orchestrate her dismissal in retaliation for questioning management decisions regarding team structure and work assignments.

**II.   Discussion:**

Defendant has now moved for dismissal of this case for failure to state a claim upon which relief may be granted pursuant to FED.R.CIV.PROC. 12(b)(6). First, Defendant contends Plaintiff's Title VII and ADA claims are barred because Defendant was not Plaintiff's employer. Second, Defendant contends Plaintiff's Title VII and ADA claims are barred because Plaintiff failed to file a timely charge of discrimination with the Equal Employment Opportunity

Commission (EEOC). Third, Defendant contends Plaintiff did not allege she was a United States citizen at the time of her employment with WMGS (Shanghai) Co., Ltd.

In Response, Plaintiff argues that Defendant was her employer. Plaintiff contends that at or before the time of the filing of her Complaint she initiated the process of filing a charge of employment discrimination with the EEOC of the State of New York and attached to her response the "Right to Sue" letter that has since been received. Plaintiff argues that she is a citizen within the meaning of Title VII, as she was a Legal Permanent Resident prior to accepting the job with WMGS (Shanghai).

### A. Claim under Title VII and the ADA:

The Court will first address Defendant's argument that Plaintiff does not allege she was a United States citizen at the time of her employment with WMGS (Shanghai), and was therefore not an "employee" within the meaning of Title VII and the ADA. Both Title VII and the ADA prohibit discrimination by an employer against an employee. 42 U.S.C. §2000e et seq.; 42 U.S.C. § 12111 et seq. With respect to employment in a foreign country, both Title VII and the ADA define an "employee" as a citizen of the United States. 42 U.S.C. §2000e(f); 42 U.S.C. § 12111(4). Furthermore, a Legal Permanent Resident employed abroad by an American company is not afforded the protection of either Title VII or the ADA.[2]  Shekoyan v. Sibley Intern., 409 F.3d 414, 421-422, (D.C. Cir. 2005) cert denied 546 U.S. 1173 (2006)("Title VII does not extend extraterritorially to any person who is not an American citizen).

---

[2]The Court recognizes that a claim was not brought under the ADA in Shekoyan; however, as the ADA has an identical definition of "employee" as Title VII, it can be inferred to cover the ADA as well. 42 U.S.C. §12117(a) (incorporates procedural requirements of Title VII).

In the Complaint, Plaintiff indicates she worked for WMGS (Shanghai) in Shanghai, China, and does not allege she was a United States citizen. Plaintiff contends in her Response to Defendant's Motion, that prior to accepting the job offer with WMGS (Shanghai) she was a Legal Permanent Resident. However, as addressed in <u>Shekoyan</u>, a Legal Permanent Resident working in a foreign country is not an "employee" under Title VII or the ADA. The undersigned, therefore, finds and recommends that Defendant's motion to dismiss Plaintiff's Title VII and ADA claims be granted on this basis.

Since the recommendation regarding Defendant's argument that Plaintiff was not a United States citizen is dispositive, a discussion regarding Defendant's arguments that Defendant was not Plaintiff's employer and that Plaintiff failed to file a timely charge of discrimination with the EEOC is not necessary.

      **B.**    **Claim under Diversity of Citizenship**:

In the Complaint, Plaintiff alleged jurisdiction in this Court under Title VII and the ADA, as addressed above, and Diversity of Citizenship pursuant to 28 U.S.C. § 1332. However, the allegations addressed in the Complaint all pertain to Title VII and the ADA. While Plaintiff has not filed a motion to amend her Complaint to include the underlying cause of action for Diversity Jurisdiction, the undersigned will address these arguments for the sake of judicial economy.

In her Reply dated May 24, 2010, Plaintiff argued that this Court maintained Diversity Jurisdiction, but failed to state where Plaintiff holds citizenship and the underlying cause of action. (Doc. 20). By Order dated May 27, 2010, the Court directed Plaintiff to establish which state she maintains citizenship and her underlying cause of action in order to establish diversity jurisdiction in this Court. (Doc. 21).

On June 7, 2010, Plaintiff filed a Response stating that she was a lawful resident of "New York/New Jersey"[3] and that she intended to remain so for an indefinite period. (Doc. 22). Plaintiff contends that Defendant's actions in her dismissal rise to the level of a tortious act that directly resulted in the "impairment of current and future earning capacity, personal humiliation, embarrassment and emotional pain and suffering." Plaintiff contends Defendant did not have the right to "terminate at-will" as this manner of termination contradicts Defendant's stated policy as written in Defendant's own employee handbook. Plaintiff contends that even if Defendant seeks to set aside the contract, arguing that the contract for employment was between WMGS (Shanghai) and Plaintiff, the question of a reasonable expectation of job security based on the content of the employee handbook remains.[4]

On June 9, 2010, Defendant filed a Reply, stating that any state cause of action available to Plaintiff for wrongful discharge would be based on the Arkansas Civil Rights Act, A.C.A. 16-123-101, et seq. (hereninafter "ACRA") for disability discrimination. (Doc. 23). Defendant states even if Plaintiff could establish that Defendant was her employer within the meaning of the ACRA, an amendment to her Complaint to assert diversity jurisdiction for a cause of action for disability discrimination would be futile because Plaintiff did not timely file her EEOC action, and the ACRA does not cover discrimination based on a perceived disability.

---

[3] Plaintiff indicated she moved from one domicile to another due to financial constraints.

[4] Plaintiff states she was furnished a copy of Defendant's employee handbook when she signed the contract for employment with WMGS Shanghai. (Doc. 7, p. 2)

1.  **Claim under ACRA:**

Under the ACRA, a Plaintiff must bring an action for employment discrimination "within one (1) year after the alleged employment discrimination occurred, or within ninety (90) days of receipt of a "Right to Sue" letter or a notice of 'Determination' from the United States Equal Employment Opportunity Commission concerning the alleged unlawful employment practice, whichever is later." A.C.A. § 16-123-107. With respect to a claim of disability discrimination, the Arkansas Supreme Court has held that "[t]he plain language of the Arkansas Civil Rights Act makes clear that our state act only contemplates coverage for persons presently suffering a disability." Faulkner v. Arkansas Children's Hosp., 69 S.W.3d 393, 402 (Ark. 2002).

In the present case, even if Plaintiff were found to have filed her EEOC claim in a timely manner, Plaintiff does not allege she has a actual disability; rather Plaintiff alleges that she was inaccurately perceived as having a disability. The ACRA does not provide a cause of action for a perceived disability. See id.

2.  **Breach of Employment Contract:**

Plaintiff argues that the actions taken by Defendant belie the policies stated in the Wal-mart Global Procurement Handbook (hereinafter "Handbook").[5] (Doc. 1, Exhibits 3 and 4). Plaintiff states Defendant specifically violated the following policy: "It is the policy of Wal-Mart to provide recruitment, hiring, training, promotion and other conditions of employment without regard to race, color, age, gender, religion, disability, national origin, or veteran status." (Doc.

---

[5] The Court notes the Wal-mart Global Procurement Handbook submitted does not contain page numbers and some pages appear to be out of order.

4, Exhibit 2, p. 32). Plaintiff contends that the Handbook was a contract and that Defendant breached this contract.

In Arkansas, the general rule is that an employer or an employee may terminate an employment relationship at-will. See Crain Indus., Inc. v. Cass, 810 S.W.2d 910 (Ark. 1991); Gladden v. Arkansas Children's Hospital, 728 S.W.2d 501 (Ark. 1987). There are two basic exceptions to the at-will doctrine: (1) where an employee relies upon a personnel manual that contains an express agreement against termination except for cause; and (2) where the employment agreement contains a provision that the employee will not be discharged except for cause, even if the agreement has an unspecified term.[6] Crain Indus., Inc., 810 S.W.2d at 912-913.

In the present case, Plaintiff has not shown that the Handbook she received upon her employment with WMGS Shanghai fits either exception. In fact, evidence submitted by Plaintiff indicates that she signed an Acknowledgment on January 25, 2006, which stated "I understand that the information contained in this handbook are guidelines only, and are in no way to be interpreted as a contract." (Doc. 4, Exhibit 4, p.9). Accordingly, Plaintiff was an at-will employee and WMGS Shanghai was free to terminate her employment.

### 3. Tort Claims:

Plaintiff alleges Defendant's actions in her dismissal rise to the level of a tortious act.

---

[6] The Court notes there is also another narrow public policy exception to the employment at-will doctrine. This exception was established in Sterling Drug, Inc. v. Oxford, 743 S.W.2d 380 (Ark. 1988). In that case, the Court held that an at-will employee has a cause of action for wrongful discharge if he or she is fired in violation of a well-established public policy of the state. The Court in Sterling recognized that the public policy of a state is found in its constitution and statutes. Id at 385.

### a) Tortious Interference with Employment Relations

In order to establish a claim for tortious interference with a contract, a Plaintiff must establish (1) the existence of a valid contractual relationship; (2) knowledge of the relationship on the part of the third party; (3) intentional and improper interference by that third party inducing or causing a breach or termination of the relationship; and (4) resulting damage to the Plaintiff. Faulkner, 69 S.W.3d at 405. A Defendant is liable for tortious interference only if the Defendant's interference with some relevant advantage was "improper." Mathis v. Liu, 276 F.3d 1027, 1029-1930 (8th Cir. 2002), citing Mason v. Wal-Mart Stores, Inc., 969 S.W.2d 160, 165 (Ark. 1998). Arkansas courts look to considerations like those laid out in the Restatement (Second) of Torts § 767 (1979) to determine whether a Defendant's interference is improper. See Mason, 969 S.W.2d at 165. These considerations include the " 'nature of the actor's conduct ... the actor's motive ... the interests of the other with which the actor's conduct interferes ... the interests sought to be advanced by the actor ... the social interests in protecting the freedom of action of the actor and the contractual interests of the other ... the proximity or remoteness of the actor's conduct to the interference and ... the relations between the parties.'" Id. at 164 (quoting Restatement (Second) of Torts § 767 (1979)). Furthermore, a successful claim for interference with a contractual relation must allege and prove that a third person did not enter into or failed to continue a contractual relationship with the Plaintiff as a result of the unauthorized conduct of the Defendant. Navarro-Monzo v. Hughes, 763 S.W.2d 635 (Ark. 1989).

Here, Plaintiff alleges Defendant was her employer. Therefore there is no third party for the purposes of Plaintiff's tortious interference claim.

**b)** **Tort of Outrage:**

Four factors are necessary to establish the tort of outrage. They are: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the Defendant were the cause of the Plaintiff's distress; and (4) the emotional distress sustained by the Plaintiff was so severe that no reasonable person could be expected to endure it. Cincinnati Life Ins. Co. v. Mickles, 148 S.W.3d, 768, 774 (Ark.App., 2004). The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. Id. Merely describing conduct as outrageous does not make it so. Faulkner, 69 S.W.3d at 404.

In the present case, Plaintiff presents facts indicating she questioned the logic of a reconfiguration of product lines; received a "Coaching for Success" letter outlining deadlines and requirements for Plaintiff to work on;[7] discussed with her supervisor the negative health effects she was experiencing due to prolonged hours, which was not well received; was advised by a senior manager to undergo a medical evaluation; was given an ultimatum to take medical leave to undergo further testing, which she did and was cleared to return to work; returned to work with normal responsibilities; was told of WMGS Shanghai's intent to terminate Plaintiff due to her "current health condition;" was offered a payment in return for Plaintiff's waiver of any and all further claims; and was given no option to discuss termination.

Viewing all facts alleged in the Complaint as true, and giving Plaintiff all reasonable inference therefrom, the undersigned finds Plaintiff has not alleged conduct that is beyond all

---

[7] The Handbook discusses the "Coaching for Success" under Personnel Policy. (Doc. 4, Exhibit 3, p. 24).

possible bounds of human decency and utterly intolerable in a civilized society so as to rise to the level of outrage.

**III.     Conclusion:**

Based on the above, I recommend that Defendant's Motion to Dismiss (Doc. 11) be GRANTED. **The parties have fourteen days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of July 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-11-